**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THOMAS ANTHONY VINSON,

    Plaintiff,

    v.

CORRECTIONAL OFFICER BROWN, et al.,

    Defendants.

Case No. 2:23-cv-80

Sargus, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Pursuant to local practice, this prisoner civil rights case has been referred to the undersigned magistrate judge. Currently pending is Defendants' motion to dismiss Plaintiff's amended complaint against them, along with several non-dispositive motions. For the reasons that follow, the undersigned recommends that Defendants' motion to dismiss be granted only in part. A separate order addresses the pending non-dispositive motions and sets new pretrial deadlines.

**I.    Background**

Plaintiff Thomas Anthony Vinson, presently incarcerated at the Chillicothe Correctional Institution ("CCI"), initiated this lawsuit on January 5, 2023 by filing a complaint against Correctional Officer Captain Brown, Correctional Officer Lt. Mavis, CCI Nurse Brown, and CCI Nurse Dobie. On September 8, 2023, Plaintiff filed an amended complaint in which he added the Chillicothe Correctional Institution itself "d/b/a State of Ohio Correctional Facility" as an additional Defendant. (Doc. 13). Other than adding CCI and a number of exhibits, the amended complaint did not substantially differ from the original complaint. On initial screening under 28 U.S.C. §§ 1915(A)(a) and 1915(e)(2), the

Court previously construed the complaint as stating a plausible claim for the unconstitutional delay or denial of medical treatment in violation of 42 U.S.C. § 1983. (Doc. 8). Specifically, Plaintiff alleges that he exhibited symptoms of a stroke on October 3, 2020, but that despite those symptoms and complaints, the Defendants failed to transfer him to a hospital for medical treatment until two days later, on October 5, 2020.

On April 4, 2024, Defendants moved to dismiss the amended complaint on multiple grounds. (Doc. 22). After Plaintiff filed his first response in opposition to Defendants' motion to dismiss, (Doc. 26), the Court granted his motion to amend that response. (Docs. 27-28). On June 3, 2024, Defendants filed a reply memorandum. (Doc. 30). On June 20, 2024, Plaintiff filed duplicate copies of an unauthorized sur-reply, which Defendants promptly moved to strike. (Docs. 31, 32, 33).[1]

**II.     Standard of Review**

Defendants argue that Plaintiff's amended complaint should be dismissed under Rule 12(b)(6). But in their reply memorandum, Defendants additionally argue that they are entitled to judgment under Rule 12(c). (Doc. 30). The standard of review for a motion filed under Rule 12(c) is identical to the standard of review under Rule 12(b)(6). *See JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). In fact, it is the same standard that the undersigned previously applied upon the initial screen of the complaint.

Under the relevant standard, this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law."

---

[1]Other than as noted below in FN5, this Report and Recommendation does not consider the sur-reply.

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted).

Although the pleading standard does not require "'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *106630 Southfield Ltd. Partnership v. Flagstar Bank*, 727 F.3d 502, 504 (6th Cir. 2013) (citations omitted).

The Court holds *pro se* complaints like the one filed by Plaintiff herein "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 Fed. Appx. 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Thus, the court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336.

The fact that this Court previously determined that Plaintiff's complaint stated a plausible claim using the same standard of review, (*see* Doc. 8), does not preclude the grant of a subsequent motion to dismiss. The perspective of the Court, as a neutral arbiter examining the complaint on a superficial level without the benefit of briefing, differs from that of an opposing party who has an incentive to explore all possible legal arguments in a subsequent motion to dismiss or motion for judgment on the pleadings. Necessarily constrained by limitations of time and resources in its initial sua sponte examination, this Court frequently will permit "further development" of a weak legal claim by requiring a defendant to file an answer or response. In other words, even though a Rule 12(b)(6) motion is akin to seeking reconsideration of the Court's prior screening order, this Court will on occasion grant a motion to dismiss based upon a well-supported motion. Nevertheless, the Court cannot grant a motion to dismiss if it requires the Court to look beyond the allegations of the complaint.

### III.   The Allegations of the Complaint

In order to review Defendants' arguments, the undersigned must re-examine Plaintiff's allegations. Plaintiff alleges that he was working in food service at CCI on October 3, 2020 when coworkers noticed obvious physical symptoms that rendered Plaintiff "unable to perform his basic work details." Therefore, they alerted his supervisor.

4

(Doc. 13, ¶ 17 at PageID 106-107). Two affidavits attached to the complaint from other inmates attest that Plaintiff exhibited obvious stroke symptoms, including an inability to move the right side of his body at the time. (Doc. 13, PageID 114, 116).

Plaintiff alleges that a supervisor named Mettler contacted the "Medical Department" but was told "there was nothing wrong with Plaintiff and to have Plaintiff fill out a health service request form." (*Id*., ¶ 17). Plaintiff further alleges that on that same morning he reported noticeable discomfort in his right leg and that he and others "requested that a call be placed to the shift Captain, or someone in immediate administrative Authority and/or the Mental Health Department." (*Id*., ¶18, PageID 107). In response, Defendant Captain Brown told Mettler to tell Plaintiff "[t]o use his other damn good arm." (*Id*., ¶ 19).[2] Plaintiff alleges that he was "given a verbal direct order to go back to work." (*Id.*, ¶ 22). He alleges he next spoke with a "white shirt" supervisor, Defendant Lt. Mavis, to request urgent medical attention. However, Mavis "conducted a brief observation" and similarly opined that there was nothing wrong with Plaintiff and told him to "get his ass back to work or be placed in isolation." (*Id.*). Eventually, after approximately four hours, Plaintiff alleges he was finally escorted to the Medical Department, but complains he was seen "for roughly and/or less than seven minutes" before being instructed to return to work. (*Id.*, ¶25).

The undersigned reasonably construes the complaint as alleging that those on duty in the Medical Department initially refused to see him at the onset of his stroke symptoms. Once he was transported to the Medical Department roughly four hours

---

[2]Although the amended complaint implies the same, Plaintiff's amended response in opposition to the motion to dismiss more expressly asserts that Defendant Capt. Brown initially refused to send Plaintiff to the medical department. (Doc. 28, PageID 275).

5

his initial request for emergency treatment, Plaintiff alleges that Nurse Brown[3] and/or Nurse Dobie conducted an inadequate examination and continued to deny him appropriate treatment. He alleges that he questioned both nurses but that they merely gave him "a direct order to leave" or be issued a Rule Infraction, and that "[n]othing further was said by Nurse Brown or Nurse Dobie." (*Id.*) Plaintiff complains that the only treatment they provided was "a few aspirins and some muscle rub." (*Id.*).

The next day on October 4, 2020, Nurse Radcliff observed him struggling to use his right arm and asked what was going on. (*Id.*, ¶28). Later that evening, unidentified personnel apparently contacted the Chief Medical Officer, Sonya Peppers, who advised that Plaintiff would be seen at sick call the following day. (*Id.*) Plaintiff complains about the additional delay and denial of treatment in light of his allegedly "visible/ noticeable signs and symptoms of a stroke." (*Id.*)

On October 5, 2020, Plaintiff alleges that he again sought care, this time requesting to be seen by the Mental Health Department. Once escorted to that department, however, a mental health staff member identified as Nurse Case "personally took Plaintiff over to medical." (*Id.*, ¶ 32, PageID 109). During the October 5 trip to the Medical Department, "Nurse Dave" examined Plaintiff's right arm, noting that it was cold and had only a faint pulse. (*Id.*, ¶ 33). Another nurse then examined Plaintiff and "had Plaintiff rushed out to Adena Regional Hospital for further testing and observation." (*Id.*) Plaintiff subsequently was transported by ambulance to Ohio State University, where he was diagnosed with ischemic stroke. (*Id.*)

---

[3]Plaintiff alleges that Captain Brown and Nurse Brown are husband and wife. (*Id.*, ¶27, PageID 108).

6

In sum, the undersigned reasonably construes the complaint as generally alleging that Plaintiff experienced a stroke early on October 3, 2020, but that Defendants exhibited deliberate indifference to his obvious need for emergency care between October 3 and October 5, 2020. Plaintiff further alleges that the conduct of all individual Defendants violated institutional policy that requires correctional staff and health care staff to respond to a "medical emergency" within four minutes. (*Id.*, ¶¶ 18, 25, 26). He alleges that all Defendants "knew that the Plaintiff suffered from serious medical infirmities (chronic care ailments)" and "failed to directly interpret his initial symptoms" and, "were deliberately indifferent to his medical needs" on October 3, 2020. (*Id.*, ¶ 31, PageID 109). Plaintiff seeks monetary damages and injunctive relief to prevent future violations of CCI's existing "Emergency Services" policy. (*Id*., PageID 110).

### IV. Analysis

Defendants present seven arguments in favor of dismissal of Plaintiff's complaint for failure to state a claim, and/or for judgment on the pleadings. A few of Defendants' arguments are persuasive. But other arguments are either unpersuasive or are premature in the absence of further factual development.

### A. Statute of Limitations

Defendants argue that Plaintiff's § 1983 claims are barred by Ohio's two year statute of limitations. But Defendants fail to acknowledge that the applicable statute of limitations is tolled for prisoners who are pursuing mandatory administrative exhaustion under the Prison Litigation Reform Act ("PLRA"). *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) ("[T]he statute of limitations which applied to [plaintiff's] civil rights

action was tolled for the period during which his available state remedies were being exhausted."); *Waters v. Evans*, 105 Fed. Appx. 827, 828-29 (6th Cir. 2004) (same).

Plaintiff's amended complaint[4] contains copies of administrative grievance records regarding his claim of inadequate medical care. (*See* Doc. 13, PageID 118). The exhibits reflect that Plaintiff continued to exhaust his administrative remedies through January 8, 2021. (Doc. 13, PageID 124; *see also id*., PageID 106). Plaintiff initiated this lawsuit on January 5, 2023, less than two years after he appears to have completed the administrative exhaustion process. Therefore, Defendants have failed to carry their burden to show that Plaintiff's claims are time-barred. *Accord*, *Hollis v. Erdos*, 480 F.Supp.3d 823, 832 (S.D. Ohio, 2020) ("Given the availability of such tolling, Defendants have not carried their burden of demonstrating that the claims here are untimely.").

Although the undersigned finds the limitations argument to be unpersuasive in light of Defendants' Rule 12 burden of proof, I write further to briefly address Plaintiff's suggestion that this Court should permit him to file a second amended complaint in order to add a more recent claim concerning a medication issue that led to a blood transfusion. (Doc. 28, PageID 269). Plaintiff has not filed a formal motion to amend, and does not identify the date on which the recent incident occurred, or what role any Defendant may have played. In other words, it is not apparent that Plaintiff's recent medical issue is at all related to the claims asserted in this lawsuit. Therefore, even if Plaintiff had filed an appropriate motion to further amend, there would appear to be no grounds for granting it.

---

[4]Defendant's additional cursory argument that the amended complaint is time-barred because it was not filed until September 2023 is unpersuasive. Defendant offers absolutely no argument to rebut the presumption that the amended complaint (which is nearly identical to the original, but for the addition of one defendant and exhibits) does not relate back to the original.

**B. Eleventh Amendment Immunity**

Defendants more persuasively argue that any claims that seek monetary damages against them in their *official* capacities are barred by sovereign immunity under the Eleventh Amendment. For the same reasons, and under Ohio law, Plaintiff has failed to state any claims for negligence, medical malpractice or medical neglect against them in their official capacities under state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State protected by the Eleventh Amendment.").

**C. Exclusive Determination of State Law Immunity in Ohio Court of Claims**

Defendants are also entitled to dismissal of any purely state law claims filed against them in their *individual* capacities. Ohio has not consented to state law actions against the State of Ohio and state officials outside of its own courts. *See Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). And Ohio Rev. Code § 9.86 provides that no "employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the ... employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." In turn, Ohio Rev. Code § 2743.02(F) establishes that lawsuits alleging damages against state employees "shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86." Thus, "Ohio law requires that, as a condition precedent to asserting a cause of

action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

Plaintiff does not appear to contest the dismissal of his state law claims. In his response, he states that "any state claim asserted or ascertained as a state law claim is hereby surrendered." (Doc. 28, PageID 265).

### D. Whether Plaintiff Sufficiently Alleges Personal Involvement

Next, the undersigned considers Defendants' argument that Plaintiff has failed to sufficiently allege each Defendant's personal involvement. "It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." *Williams v. Hodge*, No. 3:08-cv-387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)).

Identifying who harmed the plaintiff and how they did so is a "basic pleading essential" required to state a claim. *Wells v. Brown*, 891 F.2d at 594. "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege . . . facts that demonstrate what *each* defendant did that violated the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted, emphasis original). That is, a plaintiff must show that the alleged violation of his constitutional rights was personally committed by the defendant. *Id.; Heyerman v. Cty. of*

10

*Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (persons sued in their individual capacities under § 1983 are liable only for their own unconstitutional behavior) (citations omitted).

Defendants' argument is persuasive as to CCI.[5] As Defendants point out, CCI is not mentioned beyond the caption of the amended complaint. In addition, Defendant CCI is not a "person" and is therefore not subject to suit under § 1983. *Kitchen v. Lucasville Corr. Inst.*, No. 1:22-cv-500, 2022 WL 5437346, at *4 (S.D. Ohio Oct. 7, 2022), *report and recommendation adopted*, 2023 WL 318104 (S.D. Ohio Jan. 19, 2023) (and cases cited therein) ("A prison is not a 'person' under this statute"). Even if Plaintiff had directly named CCI's Warden,[6] there are no allegations of the Warden's personal involvement that would be sufficient to establish § 1983 liability. S*ee Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability."); *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (holding that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

But Defendants' argument is less persuasive as to the four individual Defendants. Defendants complain that Plaintiffs' allegations against Nurses Brown and Dobie are insufficient because they examined him on Saturday afternoon. A line-by-line narrative of what occurred on October 3, 2020 is not necessary to support a deliberate indifference

---

[5]The undersigned declines on the whole to consider the procedurally improper sur-reply. But to the extent that a reviewing court would find any basis for considering it, Plaintiff appears to acknowledge therein the insufficiency of his claim against CCI or its warden. (*See* Doc. 31, PageID 308-309).

[6]Defendants' motion refers to the Warden as if he is also a Defendant. He is not. (*See* Doc. 8, acknowledging that Warden was inadvertently included as a defendant through clerical error, and directing the Clerk to strike the inadvertent inclusion from the docket).

11

claim. Instead, Plaintiff need only allege sufficient facts to establish how each Defendant became aware of Plaintiff's need for treatment and their response.

Construed liberally, Plaintiff has alleged that not only did he report his stroke symptoms to each Defendant, but that his symptoms were obvious to any casual observer. (*See* Doc. 28, PageID 267). To the extent that Plaintiff's stroke symptoms were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted), he need only allege facts that establish that each Defendant had knowledge of those symptoms. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 114 S.Ct. 1970, 1981, 511 U.S. 825, 842 (1994). Here, Plaintiff has alleged sufficient facts to draw a reasonable inference that the two nurses refused to attend to him when his symptoms were first reported to them, and that they still did not refer him for emergency treatment when they examined him hours later, even though his stroke symptoms were obvious. In addition to the obviousness of his symptoms, Plaintiff asserts that as trained medical professionals, the nurses would have known of his chronic and complex medical history, and corresponding elevated risk of stroke.[7]

---

[7] The complaint does not spell out the relationship between Plaintiff's chronic conditions and stroke in detail, but the undersigned reasonably infers that the chronic conditions elevated Plaintiff's underlying risk of stroke. In Plaintiff's response he asserts that Nurse Brown, Nurse Dobbie, and Captain Brown were told that he was having a stroke, and suggests that those three were aware of his increased risk due to chronic diabetes, hypertension, and high cholesterol. (Doc. 28, PageID 261-262). He asserts that all Defendants either personally observed or (in the case of Captain Brown) were informed of Plaintiff's inability to use his right extremities, but declined to obtain emergency care "because they simply did not like him." (Doc. 28, PageID 263; *see also id*., PageID 271).

Under Rule 12, the undersigned evaluates only the sufficiency of the allegations in the complaint. Construing the complaint liberally, Plaintiff has sufficiently alleged deliberate indifference against the nurses based on the obviousness of his symptoms, as well as the nurses' general medical knowledge and specific knowledge of his medical history.

The issue is only slightly closer for claims filed against Captain Brown and Lt. Mavis. Despite their lack of medical training, Plaintiff has also sufficiently alleged that both Captain Brown and Lt. Mavis either directly observed or were informed of symptoms that would have been "obvious" even to a layperson, but that both verbally refused (at least initially) to permit Plaintiff to be evaluated by the Medical Department. Thus, Plaintiff has alleged sufficient facts that Defendants Brown and Mavis exhibited deliberate indifference to his serious medical need.

**E. Deliberate Indifference vs. Negligence**

Taking a slightly different approach, Defendants urge this Court to dismiss on grounds that Plaintiff's allegations support no more than a claim of negligence under state law. Focusing on the allegations of negligence, Defendants assert that Plaintiff's complaint fails to state a constitutional injury under 42 U.S.C. § 1983.[8] The undersigned disagrees.

It is true that Plaintiff's complaint includes ample references to a state law claim of "negligence." (*See* Doc. 13, ¶¶ 21, 25). But he also refers to medical "neglect" and asserts "deliberate indifference" by Defendants in violation of the Eighth Amendment, relating to the delay in responding to his "serious Medical Need/Emergency." (*See id.*, at ¶¶ 23, 26,

---

[8]For the convenience of the Court, the undersigned considers together Defendants' closely related arguments on "negligence" and on "deliberate indifference."

13

28; *see also id*. at ¶31, alleging Defendants acted either "deliberately *or* negligently." (emphasis added). So the fact that Plaintiff's complaint includes a state law claim of negligence does not cancel out his *additional* allegations of deliberate indifference under the Eighth Amendment.

A deliberate indifference claim "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). Such a claim requires a plaintiff to prove both objective and subjective components. At trial, a plaintiff must put forth evidence to show a "sufficiently serious" medical need, and that the defendants acted with "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895. Defendants' motion to dismiss asserts that Plaintiff's complaint does not contain sufficient allegations to state either the objective or subjective components of a deliberate indifference claim.

The undersigned reiterates that this R&R evaluates Plaintiff's complaint under the narrow scope of review applicable under Rule 12(b)(6) – the same standard previously used on initial screening. Beyond that scope of review, the undersigned expresses no opinion on whether Plaintiff ultimately will be able to prove his claims.

Returning to the pleading standard, Defendants posit that Plaintiff has failed to adequately allege the objective prong of his constitutional claim. But Plaintiff has alleged that he exhibited obvious signs of a stroke on the morning of October 3, 2020. There can be no serious dispute that an inmate who alleges he was denied care in the midst of suffering a stroke has sufficiently alleged an objectively serious medical need.

Defendants also claim that Plaintiff's allegations and supporting exhibits fail to state the subjective component of an Eighth Amendment deliberate indifference claim. Plaintiff admits he was first examined and assessed by the Medical Department roughly four hours after he sought medical treatment on October 3, 2020. The exhibits further reflect he was again seen "in pill line" on October 4, 2020. Relying on Plaintiff's admission that he was provided *some* medical treatment, Defendants argue that the complaint should be dismissed based on that treatment. They construe his admission of the care provided to him in the afternoon of October 3 as evidence that he showed "no signs" of a stroke when examined on that date. A similar characterization of the medical record is contained in prison officials' responses to Plaintiff's grievances, attached as exhibits to Plaintiff's amended complaint. (Doc. 22, PageID 198; *see also* Doc. 13, PageID 120-121). Absent signs of a stroke, Defendants argue he cannot prove his claim of deliberate indifference.

To support their argument, Defendants rely on the following language from an oft-cited footnote: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). But Defendants' argument is premature without further factual development of the record. Plaintiff's complaint is reasonably construed as alleging that he exhibited clear and unmistakable signs of stroke on the morning of October 3, 2020, but was provided virtually no care at all for two full days. The same Westlake footnote goes on to explain: "[I]n some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Id*. For

15

example, an allegation that a defendant offered a single band aid to an inmate who was profusely bleeding from multiple deep stab wounds would be an admission of "some medical attention," but would still be sufficient to state a claim for deliberate indifference.

Moreover, Sixth Circuit authority does not support dismissal when a plaintiff alleges that the allegedly inadequate medical treatment has resulted in other injuries that include unnecessary pain.

> Despite the reluctance we expressed … to not second guess medical judgments, we have distinguished inadequate treatment cases from cases alleging intentional infliction of unnecessary pain. *See Richmond v. Huq*, 885 F.3d 928, 944-45 (6th Cir. 2018) (en banc). We have long held that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991). Further, both insufficient treatment and a delay in giving treatment may violate the Eighth Amendment.

*Briggs v. Westcomb*, 801 Fed. Appx. 956, 959-60 (6th Cir. 2020).

Under Rule 12, this Court must liberally construe and credit the allegations of the complaint. For that reason, Defendants may not obtain dismissal based solely rely on their own characterization of the medical record in response to Plaintiff's grievances, (*see* Doc. 13, PageID 120-121). Defendants' unsworn characterization of the medical record cannot defeat the contrary allegations of woefully inadequate care contained in Plaintiff's complaint.

For the reasons discussed, Plaintiff has adequately alleged that each of the four individual Defendants subjectively was aware of his objectively obvious need for emergency medical treatment on October 3, and responded with deliberate indifference to that acute need. In the absence of contrary controlling authority, Plaintiff's allegations

16

of injuries resulting from a delay in treatment are enough, at the pleading stage, to make out an Eighth Amendment claim.[9]

### F. Qualified Immunity

The last argument the undersigned must address is the assertion of qualified immunity by all four individual Defendants. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials are "entitled to qualified immunity [if] their decision was reasonable, even if mistaken." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, (1986). Qualified immunity is judged by making two inquiries. First, viewing the facts in a light most favorable to the Plaintiff, the Court determines whether the Plaintiff has shown that a constitutional violation has occurred. Second, the Court determines whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223 (2009).

In most cases, qualified immunity will be resolved at the summary judgment stage rather than on a motion to dismiss or for judgment on the pleadings.

> Although a defendant's "entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (cleaned up). "The reasoning for our general preference is straightforward: 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or

---

[9]If Defendants' characterization is well-supported *after* development of the record, they may renew their arguments on summary judgment under Rule 56.

not' for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v, Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). Therefore, "it is generally inappropriate for a ... court to grant a [12(c) motion for judgment on the pleadings] on the basis of qualified immunity." *Wesley*, 779 F.3d at 433.

*Moderwell v. Cuyahoga Cty., Ohio*, 997 F.3d 653, 660-61 (6th Cir. 2021). Of course, this general preference is not without exceptions. Thus, "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. at 231); *accord Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Above, the undersigned has explained why Plaintiff's allegations are not overly insubstantial, and are sufficient to state an Eighth Amendment claim for deliberate indifference against the four individual Defendants. Consequently, the undersigned recommends denial of Defendants' motion to dismiss on qualified immunity grounds at this time, without prejudice to renew following development of the factual record.

## V. Conclusion and Recommendation

For the reasons explained above, accordingly, **IT IS RECOMMENDED THAT**:

1. Defendants' motion to dismiss Plaintiff's claims be GRANTED IN PART as follows:

    a. All claims for monetary damages against Defendants in their official capacities should be DISMISSED;

    b. All state law claims filed against Defendants in their individual capacities should be DISMISSED pursuant to Ohio Rev. Code 9.86;

    c. All claims against Defendant CCI should be DISMISSED;

18

2. Defendants' motion to dismiss should otherwise be DENIED.

                                                                                          *s/Stephanie K. Bowman*
                                                                                          Stephanie K. Bowman
                                                                                          United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION**

| | |
|---|---|
| THOMAS ANTHONY VINSON, | Case No. 2:23-cv-80 |
|     Plaintiff, | Sargus, J. |
|     v. | Bowman, M.J. |
| CORRECTIONAL OFFICER BROWN, et al., | |
|     Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).